**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BRUCE X. COOPER, | | No. 4:25-CV-00704 |
| Plaintiff, | | (Chief Judge Brann) |
| v. | | |
| DR. SCOTT PRINCE, *et al.*, | | |
| Defendants. | | |

**MEMORANDUM OPINION**

**MARCH 4, 2026**

Plaintiff Bruce X. Cooper is a serial *pro se* litigant who was previously confined at the State Correctional Institution in Dallas, Pennsylvania (SCI Dallas). Following his transfer to SCI Benner Township, he filed the instant *pro se* Section 1983[1] action, claiming that the prison transfer violated his constitutional rights, the Americans with Disabilities Act of 1990 (ADA),[2] and the Rehabilitation Act of 1973 (RA).[3] Presently pending are Defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court will grant in part and deny in part Defendants' motions.

---

[1]   42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

[2]   42 U.S.C. § 12101 *et seq.*

[3]   29 U.S.C. § 701 *et seq.*

## I.    BACKGROUND

Cooper is currently incarcerated at SCI Benner Township, in Bellefonte, Pennsylvania.[4]  He was transferred to that facility on April 11, 2024.[5]  He recounts that, before being moved to SCI Benner Township, he was incarcerated at SCI Dallas for approximately ten years following his incentive-based transfer to that institution in 2014.[6]  According to Cooper, to obtain this incentive-based transfer to SCI Dallas to be closer to his family, he was required to have five years of misconduct-free "good behavior" and obtain staff recommendations and votes.[7]

Cooper additionally alleges that he is an individual with "qualified disabilities," although he does not elaborate on this allegation in the body of his complaint.[8]  From an attachment to his complaint, it appears that the Pennsylvania Department of Corrections (DOC) has determined that Cooper has "a qualifying ADA disability," which could include the medical conditions of "arthritis in legs, limited mobility in walking long distances, lack [of] normal leg strength, swelling in legs[,] and shortness of breath" that Cooper listed on his July 2022 Inmate Disability Accommodation Request form.[9]  It could also include the numerous medical issues listed in his attached medical records.[10]

---

[4]    *See* Doc. 1-2 ¶ 2.
[5]    *Id.* ¶ 11.
[6]    *Id.* ¶ 8.
[7]    *Id.*
[8]    *Id.* ¶ 7.
[9]    *Id.* at p. 13.
[10]    *Id.* at p. 18.

The gravamen of Cooper's complaint is that his transfer to SCI Benner Township was made against his will and violated federal law.  He alleges that Dr. Scott Prince and Kim Harris effectuated the transfer to retaliate against him because he had previously filed several lawsuits and grievances against Dr. Prince.[11]  Cooper also appears to allege, perhaps in the alternative, that he was discriminatorily transferred based on his medical disabilities, in violation of the ADA and RA.[12]

Cooper sues Dr. Prince, Kim Harris (a nurse at SCI Dallas), and Erica Benning (Director of the Bureau of Health Care Services).[13]  As best as the Court can discern, he appears to be asserting a Section 1983 claim of First Amendment retaliation against all Defendants (in their individual and official capacities), a Section 1985 or Section 1986 conspiracy claim against all Defendants (in their individual and official capacities), and individual-capacity discrimination claims against all Defendants under the ADA and RA.  Cooper seeks retroactive declaratory relief acknowledging that his rights were violated, as well as compensatory and punitive damages.[14]

---

[11]  *Id.* ¶¶ 9, 11, 13, 14, 22.
[12]  *Id.* ¶¶ 1, 6, 7, 24, 27.
[13]  *Id.* ¶¶ 3-5.
[14]  *Id.* ¶¶ 28-29.

Defendants move for dismissal of Cooper's complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).[15]  Those motions are fully briefed and ripe for disposition.

## II.   STANDARD OF REVIEW

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[16]  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[17]  In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[18]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[19]  At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[20]  Second, the court should distinguish well-

---

[15]   *See generally* Docs. 13, 21.

[16]   *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).

[17]   *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

[18]   *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

[19]   *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).

[20]   *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).

pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[21]  Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[22] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[23]

Because Cooper proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[24]  This is particularly true when the *pro se* litigant, like Cooper, is incarcerated.[25]

## III.   DISCUSSION

Defendants challenge the sufficiency of all claims asserted against them, contending that Cooper's complaint fails to state a claim upon which relief may be granted.  Cooper has filed extensive briefing in response, including numerous exhibits that were not attached to his complaint.[26]  The Court will not consider such evidence at this time, as it is off limits at the Rule 12(b)(6) stage.[27]  Instead, the Court's sufficiency review will be limited to the complaint and the exhibits

---

[21]   *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[22]   *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[23]   *Iqbal*, 556 U.S. at 681.
[24]   *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).
[25]   *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).
[26]   *See* Docs. 17-1, 32-1.
[27]   *See Mayer*, 605 F.3d at 230.

attached thereto, as well as matters of public record (if necessary).[28]  With these procedural guardrails in mind, the Court will address the sufficiency of Cooper's claims in turn.

### A.    First Amendment Retaliation

Although a prisoner's constitutional rights are necessarily circumscribed, an inmate still retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the corrections system."[29]  To state a First Amendment retaliation claim, a plaintiff must plausibly plead that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action.[30]

There are a variety of ways to establish causation for a First Amendment retaliation claim.  One method is to show "unusually suggestive" timing between the protected conduct and the adverse action.[31]  When a plaintiff relies solely on circumstantial evidence of temporal proximity, the time between the protected

---

[28]   *See id.*
[29]   *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010)).
[30]   *Id.* (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser*, 241 F.3d at 333).
[31]   *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

conduct and the adverse action is often measured in days rather than weeks or months.[32]  However, there is no "bright line rule limiting the length of time that may pass between a plaintiff's protected speech and an actionable retaliatory act by a defendant."[33]  Another approach is to demonstrate "a pattern of antagonism coupled with timing."[34]  Finally, causation can be inferred "from the evidence gleaned from the record as a whole."[35]  Logically, a plaintiff asserting retaliation "will have to show . . . that the decision maker had knowledge of the protected activity[.]"[36]

All Defendants challenge the sufficiency of Cooper's individual capacity retaliation claims against them.  The Court finds that Cooper has plausibly alleged a retaliation claim against Dr. Prince only.

No defendant disputes that filing a civil lawsuit or a prison grievance is protected First Amendment conduct.  Harris and Benning also concede that, depending on the circumstances, a prison transfer can constitute an adverse action for a retaliation claim.  Dr. Prince argues that Cooper has no right to be housed in the prison of his own choosing and therefore his retaliation claim "fails at the outset."[37]  He likewise contends that, in any event, Cooper has failed to allege an

---

[32]  *See Conard v. Pa. State Police*, 902 F.3d 178, 184 (3d Cir. 2018).

[33]  *Id.*

[34]  *DeFlaminis*, 480 F.3d at 267.

[35]  *Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).

[36]  *Moore v. City of Philadelphia*, 461 F.3d 331, 351 (3d Cir. 2006) (citation omitted).

[37]  *See* Doc. 14 at 6-7.

adverse action because the transfer was executed for medical reasons.[38]  The Court disagrees.

Cooper alleges that he was transferred to SCI Benner Township against his will, taking him farther away from his family.  He further avers that the transfer caused a significant reduction in his prison employment pay, a lack of religious services for his chosen religion, and an absence of programs for "lifers," (*i.e.*, inmates serving life sentences).[39]  These allegations, taken together, plausibly allege an adverse action with respect to a prison transfer.[40]

Moreover, Dr. Prince's additional argument conflates the second element of a *prima facie* retaliation claim—an adverse action—with the same decision defense.[41]  And to the extent that Dr. Prince then argues that the same decision defense applies and requires dismissal,[42] that argument fails at the motion-to-dismiss stage.  Although Cooper's complaint includes documents showing that he

---

[38]  *See id.* at 7-8 (citing Doc. 1-2 ¶ 9).

[39]  *See* Doc. 1-2 ¶¶ 8, 26.

[40]  *See, e.g.*, *Rauser*, 241 F.3d at 333 (noting that transfer to a distant prison where family could not visit could implicate adverse action); *Siggers-El v. Barlow*, 412 F.3d 693, 702, 704 (6th Cir. 2005) (finding that prison transfer which caused loss of prison job and limited access to plaintiff's attorney could amount to an adverse action); *Williams v. Wetzel*, No. 1:17-CV-79, 2020 WL 583983, at *8 (M.D. Pa. Feb. 6, 2020) (finding that prison transfer was adverse action where it "punitively detach[ed] Plaintiff from his loved ones and/or visitation" and affected his parole recommendation).

[41]  If a prisoner-plaintiff can establish a *prima facie* retaliation case, the burden shifts to the defendant or defendants to show that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Watson*, 834 F.3d at 422 (quoting *Rauser*, 241 F.3d at 334).  This is often referred to as the "same decision defense." *Id.*

[42]  *See* Doc. 14 at 7-9.

was told that his transfer was based on his "ambulatory issues and use of an assistive device,"[43] that does not necessarily mean that Cooper is admitting that the DOC's stated reason for the transfer is accurate (rather than pretextual). Indeed, to address the same decision defense and its burden-shifting framework at the Rule 12(b)(6) stage "makes little sense,"[44] because Cooper's primary allegation is that he was transferred in retaliation for his First Amendment conduct, not for medical reasons.

Cooper's complaint, however, falters at the third element for his retaliation claims against Harris and Benning. He alleges that he filed several lawsuits and grievances against Dr. Prince and that is why Dr. Prince, Harris, and Benning facilitated his transfer to SCI Benner Township. However, it is well settled that causation cannot be inferred simply by asserting that a plaintiff pursued some protected activity (like a lawsuit or prison grievance) against a defendant or nonparty prison official who is not the alleged perpetrator of the retaliatory adverse action.[45] Such general allegations fail to establish or even infer knowledge of the

---

[43] *See* Doc. 1-2 at p. 17.

[44] *See Palmore v. Hornberger*, 813 F. App'x 68, 71 (3d Cir. 2020) (nonprecedential) (quoting *Thomas v. Eby*, 481 F.3d 434, 442 (6th Cir. 2007)).

[45] *See, e.g.*, *Nunez v. Wetzel*, No. 1:21-cv-01484, 2023 WL 2385931, at *5 (M.D. Pa. Mar. 6, 2023) (collecting cases); *Kendrick v. Hann*, No. 1:19-cv-01642, 2021 WL 2914986, at *9 (M.D. Pa. July 12, 2021); *Murray v. Smithbower*, No. 1:17-cv-0127, 2021 WL 1103524, at *7 (M.D. Pa. Mar. 23, 2021); *Horan v. Collins*, No. 1:13-cv-00140, 2016 WL 5030468, at *6 (M.D. Pa. Aug. 8, 2016); *Victor v. Lawler*, No. 3:07-cv-2058, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010); *Evans v. Rozum*, No. 07-cv-230J, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009) ("[T]here is no apparent reason why [the moving defendants] would want to retaliate against Plaintiff for filing a lawsuit against others." (second alteration in original)); *Royster v.*

protected conduct and they likewise fail to show why a defendant would take the alleged adverse action.

Cooper has not provided any plausible allegation as to why Harris or Benning would be motivated to take adverse action against him or would even have knowledge of his protected conduct.  As such, he has failed to allege causation as to Harris or Benning, and the First Amendment retaliation claims against them must be dismissed under Rule 12(b)(6).

### B.    Official Capacity Claims

Cooper sues Defendants in their individual and official capacities, at least with respect to his constitutional tort claims.[46]  However, any official capacity claim seeking monetary damages from state officials is barred by state statutory immunity.

The Eleventh Amendment to the United States Constitution prevents federal courts from entertaining lawsuits—by United States citizens or citizens of foreign states—brought against a state.[47]  This immunity from private suit extends to state agencies as well as state officials acting in their official capacity, because such

---

*Beard*, No. 1:06-cv-0842, 2008 WL 2914516, at *6 (M.D. Pa. July 24, 2008) (concluding that plaintiff failed to satisfy the causal connection for his retaliation claim against defendant because previous grievance did not name or impact that defendant), *aff'd* 308 F. App'x 576 (3d Cir. 2009) (nonprecedential) (agreeing with district court analysis).

[46]   *See* Doc. 1-2 ¶¶ 3-5; *id.* ¶ 23 ("Plaintiff specifically represent[s] that defendants 'are not' being sued under the [ADA] or [RA] in their official capacity.").

[47]   U.S. CONST. amend. XI; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).

lawsuits are essentially civil actions "against the State itself."[48]  There are two

exceptions to the Eleventh Amendment's bar to private suits against nonconsenting

states: (1) "Congress may abrogate a state's immunity" and (2) "parties may sue

state officers for *prospective* injunctive and declaratory relief."[49]

Additionally, a state may waive its immunity from suit in federal court by

voluntarily removing the case from state court to a federal forum, thereby

consenting to federal jurisdiction.[50]  "When a State, facing suit in its own courts,

purposefully requests a federal forum, it expresses a clear intent to waive immunity

from suit."[51]  Nevertheless, while removal to federal court may waive a state's

immunity from *suit* in a federal forum, it does not waive the state's immunity from

*liability*.[52]  In other words, a state's voluntary removal to federal court does not

"waive any defenses provided by its own sovereign immunity law."[53]

In that respect, Pennsylvania has not waived its statutory sovereign

immunity to liability for claims brought under Section 1983, Section 1985, or

Section 1986.[54]  Rather, it has only waived its immunity from liability for certain

---

[48]  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).
[49]  *Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa.*, 141 F.3d 88, 91 (3d Cir. 1998) (emphasis added) (citing, *inter alia*, *Ex parte Young*, 209 U.S. 123 (1908)).
[50]  *See Lombardo v. Pa., Dep't of Public Welfare*, 540 F.3d 190, 196, 197, 198 (3d Cir. 2008).
[51]  *Id.* at 197; *see also Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 624 (2002) ("[R]emoval is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter . . . in a federal forum.").
[52]  *See Lombardo*, 540 F.3d at 198-99.
[53]  *Id.* at 200.
[54]  *See* 1 PA. CONS. STAT. § 2310.

specifically enumerated tort claims for damages.[55]  Removal by a state from state court to federal court does not alter this general statutory immunity to liability.[56]

Here, Pennsylvania has waived Eleventh Amendment sovereign immunity to suit in federal court by removing this case from state court under 28 U.S.C. § 1441. But that does not mean it has waived its defense of statutory immunity to liability. Cooper seeks compensatory and punitive damages.  To the extent those money damages are sought against Defendants in their official capacities (and thus against the state itself), such claims are barred by state statutory immunity, as Pennsylvania has not explicitly carved out any exceptions to its general immunity from liability that would include federal constitutional tort claims.  Additionally, Cooper's request for a declaration that his constitutional rights were violated is retrospective, rather than prospective, in nature.[57]  Thus, all official capacity claims must be dismissed for failure to state a claim for relief pursuant to Rule 12(b)(6).

C.    **Section 1985 and Section 1986 Conspiracy**

Cooper appears to assert claims for Section 1985 conspiracy and related claims under Section 1986 for failure to prevent a Section 1985 conspiracy.  His civil conspiracy claims fail.

---

[55]  *See generally* 42 PA. CONS. STAT. § 8522.
[56]  *See Lombardo*, 540 F.3d at 198-99, 200.
[57]  Oddly, Cooper does not seek prospective injunctive relief in the form of being transferred back to SCI Dallas.

"Section 1985(3) permits an action to be brought by one injured by a conspiracy formed for the purpose of depriving, either directly or indirectly, any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws."[58]  To state such a claim, a plaintiff must plausibly allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States."[59]  A plaintiff seeking to assert a Section 1985(3) claim "must allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious."[60]  Notably, to state a conspiracy claim, a plaintiff must do more than recite talismanic phrases like "conspire" and "act in concert."[61]

---

[58]  *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (internal quotation marks and citation omitted).

[59]  *Id.* (citation omitted).

[60]  *Id.* at 135.

[61]  *See Jutrowski v. Township of Riverdale*, 904 F.3d 280, 295 (3d Cir. 2018) (explaining that, to state a civil conspiracy claim, a plaintiff must demonstrate that defendants "somehow reached an understanding to deny [the plaintiff] his rights" (alteration in original)); *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (citing *Kalmanovitz v. G. Heileman Brewing Co.*, 595 F. Supp. 1385, 1400 (D. Del. 1984), *aff'd* 769 F.2d 152 (3d Cir. 1985) ("It is a longstanding rule in the Third Circuit that a mere general allegation ... [or] averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient [to state a claim]." (citing *Black & Yates, Inc. v. Mahogany Ass'n*, 129 F.2d 227, 231-32 (3d Cir. 1941)))); *Adams v. Corr. Emergency Response Team*, 857 F. App'x 57, 61 (3d Cir. 2021) (nonprecedential) (explaining that, to state a Section 1985 conspiracy

Cooper's conspiracy claims are plainly deficient. His complaint is devoid of facts showing a meeting of the minds or agreement to violate his federal rights. Instead, he alleges, in conclusory fashion, that Defendants "acted in conspiracy" to violate his rights.[62] Such talismanic phrases do not suffice to plausibly plead a civil rights conspiracy. He further speculates that Dr. Prince and Harris "hatched" a plan to transfer him to deter him from filing future claims, but he does not plead any supporting facts that would demonstrate such a nefarious plan or agreement.[63] These are the exact type of conclusory allegations that violate the pleading requirements provided in *Twombly* and *Iqbal*. Such formulaic, purely legal conclusions must be disregarded.[64]

The only real factual detail that Cooper provides is that several weeks before his transfer, Harris allegedly asked him if he wanted to be transferred.[65] This single allegation is wholly insufficient to plausibly state a civil rights conspiracy. Accordingly, any Section 1985 or Section 1986 conspiracy claims will be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

---

claim, a plaintiff must sufficiently allege "facts and circumstances" that "support the elements of the conspiracy" and show agreement between defendants to deprive a plaintiff of a constitutional right); *Stankowski v. Farley*, 251 F. App'x 743, 748 (3d Cir. 2007) (nonprecedential) (finding that plaintiff's "conclusory allegation" that defendants "conspired" against him fails to state a claim for civil conspiracy).

[62] *See* Doc. 1-2 ¶¶ 1, 27.
[63] *Id.* ¶ 13.
[64] *Connelly*, 809 F.3d at 787 (quoting *Iqbal*, 556 U.S. at 679).
[65] Doc. 1-2 ¶ 14.

### D. ADA and RA Claims

Cooper asserts individual capacity Title II ADA and Section 504 RA claims against all Defendants.[66] The contours of his ADA and RA claims are difficult to decipher from his *pro se* complaint. As best as the Court can discern, Cooper is alleging—perhaps in the alternative[67]—that his transfer to SCI Benner Township was rooted in discrimination based on his physical disabilities.[68] It is also possible that Cooper may be alleging a failure-to-accommodate claim.

The Court need not delve into the elements of a Title II ADA claim or a Section 504 RA claim at this time. That is because there is no individual liability for either type of claim.[69] The individual Defendants are not "public entities," so they cannot be sued under Title II of the ADA[70]; and they also "do not receive federal aid," so they cannot be held liable under Section 504 of the RA.[71]

---

[66] *See id.* ¶¶ 23, 27.

[67] *See* FED. R. CIV. P. 8(d)(2)-(3) (permitting plaintiff to plead alternative, even if inconsistent, claims).

[68] Cooper does not clearly explain what "services, programs, or other activities" he was excluded from participating in or denied the benefits thereof. *See Haberle v. Troxell*, 885 F.3d 170, 178 (3d Cir. 2018) (listing elements of Title II ADA and Section 504 RA claims). The Court does not need to resolve this issue because Cooper's individual capacity ADA and RA claims are nonstarters.

[69] *See Montanez v. Price*, 154 F.4th 127, 145 (3d Cir. 2025); *see also Williams v. Pa. Human Relations Comm'n*, 870 F.3d 294, 299 & n.27 (3d Cir. 2017) (holding that Title VII and ADA claims cannot be brought through a "back door to the federal courthouse" via 42 U.S.C. § 1983, and noting that Title VII and ADA claims are intended to impose liability on employers, not individuals); *Fasano v. Fed. Reserve Bank of N.Y.*, 457 F.3d 274, 289 (3d Cir. 2006) (noting in dicta that "neither the ADA nor 12 U.S.C. § 1831j permit individual damages liability on the part of employees").

[70] *See Montanez*, 154 F.4th at 145 (citation omitted); 42 U.S.C. § 12132.

[71] *See Montanez*, 154 F.4th at 145 (citing *Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002) (per curiam)).

15

Accordingly, Cooper's individual capacity ADA and RA claims must be dismissed under Rule 12(b)(6) for failure to state a claim.

### E.    Exhaustion of Administrative Remedies

The Court makes one final observation.  From the documents filed in opposition to Defendants' Rule 12(b)(6) motions,[72] it does not appear the Cooper exhausted administrative remedies against Benning under the well-established requirements of the Pennsylvania Department of Corrections' three-step grievance process.[73]  His grievances and appeals, in which he asserts that his transfer was retaliatory, never discuss or even mention Benning, despite DC-ADM 804's clear requirement that the inmate identify the individual or individuals involved in the complained-of incident.[74]

Nevertheless, exhaustion is an affirmative defense,[75] and it cannot be conclusively determined that Cooper failed to exhaust the instant claims from the face of his complaint.  Accordingly, the Court declines to *sua sponte* dismiss the claims against Benning at this time under 28 U.S.C. § 1915A(b)(1) for failure to exhaust administrative remedies.

---

[72]  *See* Doc. 17-1 at 13, 19-20, 25; Doc. 32-1 at 3, 20, 23.

[73]  *See Booth v. Churner*, 206 F.3d 289, 292 n.2 (3d Cir. 2002); COMMONWEALTH OF PA., DEP'T OF CORR., INMATE GRIEVANCE SYS., Policy No. DC-ADM 804 (May 1, 2015) (hereinafter "DC-ADM 804").

[74]  *See* DC-ADM 804 § 1(A)(11)(b) ("The inmate shall identify individuals directly involved in the event(s).").

[75]  *See Jones v. Bock*, 549 U.S. 199, 216 (2007).

**F.   Leave to Amend**

Generally, "*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile."[76]  The Court will grant Cooper limited leave to amend.  Cooper may not reassert his official capacity constitutional tort claims, as those claims are barred by state statutory immunity.  He likewise may not reassert his individual capacity Title II ADA and Section 504 RA claims, as there is no individual liability for such claims.  The foregoing claims will be dismissed with prejudice.

If Cooper chooses to file an amended complaint in conformity with this Memorandum, it should be a stand-alone document, complete in itself and without reference to any previous pleadings.  The amended complaint should set forth his claim or claims in short, concise, and plain statements, and in sequentially numbered paragraphs, much like his original pleading.  Cooper *must* address the deficiencies identified in this Memorandum.  Any documents he wants to include with his amended pleading should be attached to his complaint.  He should leave one-inch margins on all four sides of his pleading.[77]  He must also name proper defendants and specify the offending actions or omissions by a particular

---

[76]   *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).
[77]   *See* LOCAL RULE OF COURT 5.1.

17

defendant.  Additionally, he must sign the amended complaint and indicate the nature of the relief sought.

If Cooper does not timely file an appropriate amended complaint, dismissal of any claims without prejudice will automatically convert to dismissal with prejudice.  This case would then proceed on one Section 1983 claim: individual capacity First Amendment retaliation against Dr. Prince.

## IV.    CONCLUSION

Based on the foregoing, the Court will grant defendant Harris's and defendant Benning's motion to dismiss (Doc. 21) and will grant in part and deny in part defendant Dr. Prince's motion to dismiss (Doc. 13) pursuant to Federal Rule of Civil Procedure 12(b)(6).  An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

18